NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| PATRICK LEON HINSON,<br><br>　　　　　　　　Appellant,<br><br>　　　　v.<br><br>STATE OF ALASKA,<br><br>　　　　　　　　Appellee. | Court of Appeals No. A-11839<br>Trial Court No. 3PA-12-1768 CR<br><br>O P I N I O N<br><br>No. 2508 — July 1, 2016 |

Appeal from the Superior Court, Third Judicial District, Palmer, Beverly Cutler, Judge.

Appearances: David D. Reineke, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD.

A jury convicted Patrick Leon Hinson of felony failure to register as a sex offender and sixth-degree misconduct involving a controlled substance (based on his

---

[*]　Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

possession of marijuana).  In this appeal, Hinson argues that the trial court committed plain error by:  (1) allowing the jury to hear that the criminal charge was failure to register "as a sex offender"; (2) admitting evidence of the specific sex offense that gave rise to Hinson's duty to register; and (3) allowing the State to make an improper closing argument about the dangerousness of sex offenders and the need for the registration requirement.  Hinson also argues that there was insufficient evidence to convict him of marijuana possession.[1]

For the reasons explained here, we conclude that the evidence was sufficient to convict Hinson of marijuana possession and Hinson has not shown plain error on any of his other claims.  We therefore affirm Hinson's convictions.

*Facts and proceedings*

On July 12, 2012, Alaska State Trooper Joel Miner stopped Hinson because he was driving without a seatbelt.  Because Hinson had a bottle of alcohol in his pocket, Miner asked to search the vehicle for open containers of alcohol.  Hinson consented to the search, and Miner found a baggie of marijuana in the center console.  Miner later testified that when he discovered the marijuana, Hinson "in a way, acknowledged that it was his" by stating, "Hey, it's not a gun, it's just a little ... bit of weed."

Miner decided to issue a citation for the drug offense, and he asked Hinson for his home address.  Hinson provided his address and told Miner he was a registered sex offender.  When Miner ran Hinson's information through the Alaska Public Safety

---

[1]    Hinson also makes the conclusory assertion that the court erred by admitting evidence of his bail conditions in this case.  But because Hinson makes no legal argument related to this claim, we conclude that it is waived for inadequate briefing. *Petersen v. Mutual Life Ins. Co. of N.Y.*, 803 P.2d 406, 410 (Alaska 1990) ("Where a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

Information Network, he discovered that the address Hinson provided did not match the address Hinson had reported to the sex offender registry. When Miner asked Hinson about this discrepancy, Hinson explained that he had moved four months earlier, in February 2012, when he was "kicked out" by his girlfriend. He said that he believed he had until the following year to update his sex offender registration.

Hinson was ultimately charged with felony failure to register as a sex offender for failing to notify the registry of his change of address.[2] (Hinson was charged with a felony because this was his second offense.) Hinson was also charged with sixth-degree misconduct involving a controlled substance for possessing marijuana.[3]

The superior court bifurcated Hinson's trial on the failure to register charge so the jury would not hear that Hinson had a prior conviction for failure to register unless he was convicted of the current offense. The superior court also considered whether it should "sanitize" the charge so the jury only heard that Hinson had been charged with "failure to register" and not that he had been charged with "failure to register *as a sex offender*." But the court decided not to do this, and both the prosecutor and the defense attorney agreed with the court's decision.

The prosecutor told the jury in opening statement and later introduced evidence to show that Hinson had been convicted of a misdemeanor sex offense and that he was therefore required to register as a sex offender.[4] The evidence included Hinson's sex offender registration file, which contained forms Hinson had signed acknowledging that he was required to notify the sex offender registry within one business day of any change in address. The State also introduced several documents (including a two-month-

---

[2]   AS 11.56.835(a)(1).

[3]   AS 11.71.060(a)(2)(A).

[4]   AS 11.41.438(a)(1) and AS 11.31.100(a), respectively.

old traffic citation and the bail paperwork in this case) that listed the new address Hinson had provided to Trooper Miner.

Hinson did not object to the admission of any of this evidence. At one point, the defense attorney questioned the necessity of identifying Hinson's underlying sex offense as attempted third-degree sexual abuse of a minor. But when the State sought to admit the copy of Hinson's 2001 judgment — which showed that he had entered a no contest plea to the misdemeanor offense of attempted third-degree sexual abuse of a minor and was sentenced to 6 months to serve — the defense attorney told the judge that he had no objection.

Hinson called one witness in his defense: his former girlfriend Melissa Leach, who testified that Hinson had lived with her and their two children for eight years until their breakup in February 2012. Leach testified that Hinson had occasionally returned for overnight visits and babysitting, that he had stated his intention to reconcile with Leach and move back in, and that he had never been away from the home for more than thirty consecutive days.

Based on this testimony, Hinson's attorney argued in closing that because Hinson intended to return to Leach's residence, and because he was never away from the residence for more than thirty consecutive days, he had not changed his residence for purposes of the sex offender registry. (Department of Public Safety regulations provide that a sex offender "is considered to have changed residence on the date that the offender leaves the residence without intending to return to continue living there, or the date that the offender has been away from the residence for 30 consecutive days, whichever occurs first."[5])

---

[5] 13 Alaska Administrative Code 09.040(b).

The jury convicted Hinson of failure to register and sixth-degree misconduct involving a controlled substance. Hinson subsequently stipulated that he had a prior conviction for failure to register as a sex offender and the court entered judgment on the felony to register offense.

This appeal followed.

*Why we conclude that the court's failure to redact "sex offender" from the failure to register charge was not plain error*

On appeal, Hinson argues that the jury should have been told that he was charged with "failure to register," not with "failure to register *as a sex offender*." He contends that the additional information that he was a sex offender was irrelevant and prejudicial to his defense.

But the duty to register as a sex offender only arises if a defendant has been convicted of a sex offense as defined in AS 12.63.100(6).[6] In the superior court, Hinson never offered to stipulate that he had been convicted of a sex offense that gave rise to his duty to register as a sex offender. And Hinson has not explained how, without the stipulation, the State could otherwise have proved that Hinson had a duty to register with the Alaska Department of Public Safety.

Hinson also failed to preserve this claim in the superior court. His attorney never asked the superior court to keep the full statutory definition of the offense from the jury. To the contrary, when the judge raised this issue *sua sponte*, Hinson's attorney expressly declined to object to the prosecutor informing the jury that Hinson was a sex offender and convicted of a misdemeanor sex offense.

---

[6] *See* AS 12.63.010 (requiring sex offenders to register); AS 12.63.100(5)-(6) (defining a sex offender as a person convicted of a sex offense and enumerating the crimes that qualify as a "sex offense").

Hinson now argues that, because the superior court raised this issue *sua sponte* and was clearly on notice of the legal issue, we should disregard the usual requirement of a contemporaneous objection and review his claim as though it had been preserved. This argument is meritless. As the State points out, because the defense attorney disclaimed any objection to telling the jury that he was charged with "failure to register as a sex offender," the trial court never made a legal ruling for us to review and our review is therefore limited to plain error.

We find the reasoning of *State v. McLaughlin*[7] persuasive on this issue. In *McLaughlin*, the defendant was charged with "felon in possession" — that is, possession of a concealable firearm by a convicted felon.[8] In the trial court, McLaughlin offered to stipulate that he had a prior felony, and he asked the judge to withdraw that element from the jury's consideration. The State declined the offered stipulation but the judge nonetheless granted McLaughlin's request, ruling that the jury would only consider whether McLaughlin knowingly possessed a concealable firearm (unless the prior felony became relevant for some other purpose).[9]

The State petitioned for interlocutory review of this ruling, and we reversed the trial court's decision. We acknowledged that McLaughlin had a strong evidentiary argument to exclude the evidence of his prior felony — because once a defendant concedes a prior conviction, that conviction normally has no evidentiary value apart from the impermissible inference that the defendant has a propensity to commit crimes.[10]

---

[7] 860 P.2d 1270 (Alaska App. 1993).

[8] *Id.* at 1271.

[9] *Id.* at 1272.

[10] *Id.* at 1273-74.

Nevertheless, we concluded that there were policy concerns that militated against withholding this information from the jury.

Our first concern stemmed from the necessity of a jury instruction to address why the defendant faced criminal penalties for "firearm possession" — conduct that was not normally a crime. We concluded that instructing the jury not to consider this question would have only exacerbated the potential for prejudice: jurors who knew it was illegal for a felon to possess a firearm would simply assume McLaughlin had a prior felony, while less knowledgeable jurors would still likely speculate about the issue.[11]

Our second concern was that hiding this type of information from the jurors — information central to the nature of the criminal charge — would encourage mistrust of the criminal justice system.[12] We concluded that the better approach (one that courts regularly follow in other circumstances) was to trust the jurors to make proper use of the evidence without being swayed by its potential to prejudice the accused.[13]

We ultimately concluded that the statutory definition of the crime charged is relevant information for the jury in any given case.[14] And this principle "holds true regardless of which elements of the crime are actually disputed, for without knowing the true nature of the charges, the jury is deprived of context for consideration of the issues actually in dispute."[15]

---

[11]  *Id*. at 1275.

[12]  *Id.* at 1277.

[13]  *Id.*

[14]  *Id.*

[15]  *Id.*

We believe that this reasoning has equal force here. Instructing the jury not to consider why Hinson had been charged with "failure to register" would likely have the same result: jurors who were aware of the sex offender registration law would simply assume that Hinson was a sex offender, and all the court would accomplish by disguising the nature of the charge would be to engender distrust of the legal process. Jurors who were less knowledgeable would no doubt speculate about Hinson's criminal history — particularly since the core of the State's proof was the forms Hinson had signed acknowledging his duty to notify the Department of Public Safety of his change of address — forms that would have required substantial redaction to remove any reference to a sex offense.

We also conclude that it was necessary for the jurors to understand the specific nature of Hinson's duty to register so that they could fairly evaluate whether the State had proved the intent element of the offense, which was the main dispute at Hinson's trial. If a juror imagined that Hinson's duty to register was equivalent to, for instance, the duty to inform the Department of Motor Vehicles of a change of address, the juror might conclude that Hinson could have easily overlooked the duty — particularly in the midst of the breakup of a long relationship. But the same juror might reach a different conclusion if the juror knew that the duty at stake was Hinson's duty to update his sex offender registry.

We therefore find that the superior court did not commit plain error by allowing the jury to hear that Hinson had been charged with "failure to register as a sex offender."

*Why we conclude that Hinson has not shown plain error with regard to the evidence of his underlying sex offense*

Hinson next argues that the superior court committed plain error by allowing the State to identify his underlying sex offense as attempted third-degree sexual abuse of a minor (a misdemeanor), and to introduce documents setting out the sentence he received (6 months). He argues that this evidence had no relevance to the charges against him and that it prejudiced his defense.

But Hinson did not object to the admission of this evidence at trial. Indeed, when the judge *sua sponte* called a bench conference to discuss this matter, the defense attorney stated that he had no objection to the admission of the judgment of conviction.

It is true that, by this point, the prosecutor and several witnesses had already identified Hinson's underlying sex offense. But when the judge invited the defense attorney to object to admission of the judgment, the attorney said nothing to suggest that he was withholding his objection because the prejudice to his case had already occurred; the attorney simply declined to object, as had been the case throughout the trial.

Faced with these circumstances, we believe that the trial judge could reasonably assume that the defense attorney had made a tactical decision that it would be better for the jurors to know that Hinson had been convicted of a relatively minor sex offense — a misdemeanor for which he received a sentence of only 6 months to serve and a probationary term — than for the jurors to speculate about the more serious sex crimes that Hinson might have committed.[16] We therefore find no plain error.

---

[16] *Cf. Moreno v. State*, 341 P.3d 1134, 1143-45 (Alaska 2015) (plain error review is precluded where the record is clear that counsel made an intentional and informed choice not to object or where the benefit conferred on the defendant by counsel's action is readily apparent).

*Why we conclude that the prosecutor's closing argument was not plain error*

Hinson claims that the prosecutor's summation to the jury included improper argument calculated to appeal to the passions and prejudices of the jury.[17] Specifically, he claims that the following remarks, which occurred at the beginning of the prosecutor's summation, constitute reversible error:

> At jury selection ... I asked a lot of you, why do you look up people in the sex offender registry? Because you want to know where people are living. You want to know this information because the community wants to know this information because people are buying houses and they rely on that information. People have children that go trick or treating. They rely on that information to protect their kids. They rely on the information in the registry that it's going to be truthful and accurate. The community, the State of Alaska relies on that information.

The defense did not object to these remarks.

On appeal, the State argues that the remarks were not improper because a prosecutor is permitted to comment on the valid purposes underlying a law when those purposes are relevant — for example, to address concerns about potential jury nullification. Although we agree with this general principle, and agree that a simple reference to the underlying legislative purpose of the residency requirement would not necessarily have been improper, we conclude that the prosecutor's remarks here — specifically, her references to children trick or treating and the larger community dangers posed by sex offenders — exceeded the bounds of permissible argument and improperly

---

[17]  *See Patterson v. State*, 747 P.2d 535, 538 (Alaska App. 1987) (arguments calculated to appeal to the passions and prejudices of the jury are improper).

encouraged the jury to decide the case based on emotional considerations rather than the evidence.[18]

We do not agree, however, with Hinson's contention that these remarks constitute plain error or that they represent such egregious prosecutorial misconduct as to "undermine the fundamental fairness of the trial."[19] These were isolated, brief remarks that were not repeated in the remainder of the prosecutor's opening summation or in her rebuttal — both of which were otherwise measured in tone and properly focused on the evidence at trial.[20] Thus, when viewed in the context of the record as a whole, we conclude that the prosecutor's remarks, although improper in their appeal to the jury's emotions, do not constitute plain error and do not require reversal of Hinson's conviction.

*There was sufficient evidence to convict Hinson of marijuana possession*

Lastly, Hinson argues that there was insufficient evidence to convict him of sixth-degree controlled substance misconduct because the State failed to prove that the marijuana found in the center console of his vehicle belonged to him.

To support this claim, Hinson points to cases in which the Alaska Supreme Court and this Court have held that a defendant's mere presence in a car containing drugs is insufficient to establish knowing possession of those drugs.[21] But in those cases, other

---

[18] *See Patterson*, 747 P.2d at 538-41; *see also* American Bar Association, Criminal Justice Standards for the Prosecution Function, Standard 3–6.8(c) (4th ed.).

[19] *Cook v. State*, 36 P.3d 710, 729 (Alaska App. 2001); *Potts v. State*, 712 P.2d 385, 390 (Alaska App. 1985).

[20] *Rogers v. State*, 280 P.3d 582, 589 (Alaska App. 2012).

[21] *Egner v. State*, 495 P.2d 1272, 1273-74 (Alaska 1972); *Marion v. State*, 806 P.2d 857, 860 (Alaska App. 1991).

people who might have possessed the contraband were present.[22]  Here, Hinson was the owner and sole occupant of the vehicle.  Moreover, the trooper testified that Hinson made furtive movements, reaching from his waistband and moving his hand toward the center console where the drugs were found.  And when the trooper found the marijuana, Hinson did not deny ownership of it.  Instead, he said, "Hey, it's not a gun, it's just a little ... bit of weed."  We conclude that this evidence was sufficient for the jury to conclude that Hinson knowingly possessed the marijuana, and that he was therefore guilty of sixth-degree misconduct involving a controlled substance.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[22]  *Egner*, 495 P.2d at 1273-74; *Marion*, 806 P.2d at 860.